# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald Gene Ferguson, | Case No. CV 05-1295-PCT-FJM (JM) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Warden Fizer, et al., | |
| Respondents. | |

Pending before the Court is Petitioner's Amended Petition for Writ of Habeas Corpus [Docket No. 5], filed pursuant to 28 U.S.C. § 2254. In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation. As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On March 28, 2002, the State of Arizona indicted Petitioner on one count of unlawful flight from a law enforcement vehicle, a class 5 felony; two counts of aggravated assault, class 2 felonies, and one count of criminal damage, a class 5 felony. (Ex. B.)[1] Pursuant to Rule 13.5(a), Arizona Rules of Criminal Procedure, the State also alleged a number of prior convictions. (Ex. C.) The Arizona Court of Appeals summarized the facts underlying the indictment as follows:

---

[1] Unless otherwise noted, all referenced exhibits are those attached to Respondent's Answer to Petition for Writ of Habeas Corpus.

> Officer Stolz [of the Arizona Department of Public Safety] noticed [Petitioner] in a pickup truck parked at a truck stop on the night of January 10, 2001. After determining that the license plate on the truck was registered to another vehicle, Officer Stolz parked his patrol car perpendicular to the driver's side of the truck, with his headlights illuminating the cab area of the truck, and approached [Petitioner]. . . . Officer Stolz questioned [Petitioner] and was able to observe him for approximately four minutes before defendant fled. . . .
>
> [D.P.S.] Officer Kern was called to assist after [Petitioner] fled from Officer Stolz in the truck. Officer Kern pursued [Petitioner] in his patrol car. After temporarily losing [Petitioner], Officer Kern got into an unmarked police car driven by Lieutenant Tibbets. Officer Kern and Lieutenant Tibbets encountered the pickup truck head-on in the same area where it was last seen by a police helicopter. Lieutenant Tibbets opened the door of his police car and the interior light came on. [Petitioner] rammed into the police car with both officers still inside. The officers jumped out of the police car before [Petitioner] hit it a second time. Officer Kern drew his weapon, aimed at defendant, and commanded him to stop.

(Ex. M, pp. 4-5.) At that point, the truck backed-up several hundred yards, and Petitioner ditched the truck and ran off. (Ex. J, p. 4.) Petitioner was arrested in California several months later. (*Id*., p. 5.)

Petitioner's jury trial on the charges commenced on August 14, 2002. (Ex. D.) On August 20, 2002, after a four-day trial, the jury found Petitioner guilty on all four counts of the indictment. (Ex. D & E.) The jury found the two counts of aggravated assault to be dangerous offenses. (Ex. E.)

At sentencing, the trial court found two historical felony convictions and sentenced Petitioner to an aggravated term of 6 years' imprisonment for Count I (Unlawful Flight from Pursuing Law Enforcement Vehicle); 20 years' imprisonment on Count II (Aggravated Assault on a Peace Officer), to be served consecutive to the sentence in Count I; an aggravated sentence of 21 years' imprisonment on Count III (Aggravated Assault on a Peace Officer), to be served consecutive to the sentence for Count I but concurrent with the sentence imposed in Count II; and an aggravated term of 6 years' imprisonment on Count IV (Criminal Damage), to be served consecutive to Count I and concurrently with Counts II and III. (Ex. H.)

1    Petitioner filed a timely notice of appeal, and raised one issue in his opening brief in
2 the Arizona Court of Appeals: whether the trial court erred by failing to find the pre-trial
3 identification procedures unduly suggestive after two police officers viewed a wanted poster
4 for several months prior to identifying Petitioner as the suspect, thus tainting their in-court
5 identifications. (Exs. I, J & L.) The State responded, arguing that the pre-trial identification
6 procedures were not unduly suggestive. (Ex. K.) On November 20, 2003, the Arizona Court
7 of Appeals rejected Petitioner's arguments in a memorandum decision affirming his
8 convictions and sentences. (Ex. M.) No motion for reconsideration or petition for review
9 was filed and the Order and Mandate was issued on February 27, 2004. (Ex. N.)

10    On February 23, 2004, Petitioner filed a pro per Petition for Post Conviction Relief.
11 (Ex. P.) Petitioner raised one claim alleging that the trial court improperly admitted into
12 evidence a copy of an "alleged" "driver's license" on which his identification was based.
13 (*Id*.) In a Minute Entry Order dated March 22, 2004, the trial court stated:

> An Order and Mandate issued on February 27, 2004 affirming the trial court. On February 23, 2004 the Defendant filed a Petition for Post Conviction Relief. The Court construes this filing as a Notice of Post Conviction Relief. The Court further pragmatically considers the filing now timely.

17 (Ex. Q.) In the same order, the trial court also granted Petitioner's request for the
18 appointment of counsel. (*Id.*)

19    On October 4, 2004, Petitioner's attorney filed a petition for post-conviction relief
20 alleging that the trial court violated *Blakely v. Washington*, 542 U.S. 296 (2004) and
21 *Apprendi v. New Jersey*, 530 U.S. 466 (2000) by sentencing Petitioner to aggravated terms
22 of imprisonment. (Ex. R.) The petition also raised a claim of "newly discovered evidence"
23 from an inmate Petitioner met in prison who allegedly witnessed the crimes for which
24 Petitioner was convicted and who was willing to testify to Petitioner's innocence. (*Id*.)

25    On November 10, 2004, the State responded to the petition, arguing that Petitioner
26 was not entitled to relief on his *Blakely* claim because his convictions were final before
27 *Blakely* was decided and because, even if *Blakely* did apply, Petitioner's prior convictions
28 fell outside the jury trial requirement and allowed the sentencing within the aggravated range.

- 3 -

1  (Ex. S.)  The State also argued that Petitioner's claim of newly discovered evidence was
2  logically implausible.  (*Id*.)

3  On January 24, 2005, the trial court issued its order denying and dismissing the
4  petition for post-conviction relief.  (Ex. T.)  The court concluded that "[t]he *Blakely* issue is
5  resolved by *State v. Martinez*, ___ Ariz. ___, 2004 WL 2474976," and that "[t]he newly
6  discovered evidence cannot be reasonably believed as either newly discovered or truthful.
7  See *State v. Green*, 167 Ariz. 373."  (*Id*.)  Thereafter, on February 8, 2005, counsel for
8  Petitioner filed a motion for rehearing of the *Blakely* issue.  (Ex. U.)  On February 23, 2005,
9  the trial court denied the motion for rehearing.  (Ex. V.)

10  On March 16, 2005, Petitioner submitted for mailing his pro per petition for review
11  in the Arizona Court of Appeals alleging that the trial court erred when it denied his *Blakely*
12  claim.  (Ex. W.)  On April 4, 2005, Petitioner filed a "Motion to Amend Petition to review
13  Post Conviction Relief Decision to Include Issues Appointed Counsel failed to present." (Ex.
14  X.)  On April 18, 2005, the Arizona Court of Appeals issued an order denying the motion to
15  amend and stating "that any issue not first presented to the trial court and properly preserved
16  in the original petition for review may not be considered by this court.  *See* Arizona Rules
17  of Criminal Procedure, 32.9(c) and *State v. Bortz*, 169 Ariz. 575, 821 P.2d 235 (App. 1991)."
18  (Ex. Y.)

19  On May 2, 2005, Petitioner field a notice and petition for post-conviction relief in the
20  trial court, raising numerous grounds for relief and alleging that those grounds should be
21  considered as Petitioner wanted them to be raised in the original petition for post-conviction
22  relief filed by his appointed counsel.  (Ex. Z.)  On July 11, 2005, the trial court entered an
23  order noting the 'successive" nature of the petition and finding that the claims were
24  "precluded by Rule 32.2(b) *Arizona Rules of Criminal Procedure*."  (Ex. AA.)  The court
25  also noted that Petitioner's petition for review from his first PCR proceedings was still
26  pending in the court of appeals.  (*Id*.)  Thus, the court found no colorable claim presented,
27  denied relief "in its entirety," and dismissed the successive petition.  (*Id.*)

28  On January 27, 2006, the Arizona Court of Appeals denied review of Petitioner's

1 petition for review from his first post-conviction relief denial. (Ex. BB.)

2 On April 28, 2005, Petitioner instituted this action for writ of habeas corpus, and on
3 June 9, 2005, Petitioner filed the now pending amended petition for writ of habeas corpus.
4 Petitioner alleges four grounds for relief: Ineffective Assistance of Counsel (Ground I);
5 evidence admitted in violation of the rules of criminal procedure (Ground II); right to new
6 counsel or to proceed pro se (Ground III); and denial of the right to a jury determination of
7 aggravating factors under *Blakely v. Washington* (Ground IV).

**II.     LEGAL DISCUSSION**

### A.     Timeliness under the AEDPA

Respondents concede that the Petition was filed with the AEDPA's time limits. 28 U.S.C. § 2244. The Court, therefore, will not address this issue further.

### B.     Exhaustion of State Remedies

A state prisoner must exhaust the available state remedies before a federal court may consider the merits of his habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999). Exhaustion occurs either when a claim has been fairly presented to the highest state court, *Picard v. Connor*, 404 U.S. 270, 275 (1971), or by establishing that a claim has been procedurally defaulted and that no state remedies remain available, *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Exhaustion requires that a habeas petitioner present the substance of his claims to the state courts in order to give them a "fair opportunity to act" upon these claims. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999). A claim has been "fairly presented" if the petitioner has described the operative facts and legal theories on which the claim is based. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44 F.3d 1396, 1403 (9th Cir. 1995). The operative facts must be presented in the appropriate context to satisfy the exhaustion requirement. The fair presentation requirement is not satisfied, for example, when a claim is presented in state court in a procedural context in which its merits will not be considered in the absence of special circumstances. *Castille*, 489 U.S. at 351. An exact correlation of the claims in both state and federal court is not required. *Rice,* 44 F.3d at 1403.

1  The substance of the federal claim, however, must have been fairly presented to the state
2  courts. *Chacon v. Wood*, 36 F.3d 1459, 1467 (9th Cir. 1994) (citations omitted).

3  A petitioner may also exhaust his claims by either showing that a state court found his
4  claims defaulted on procedural grounds or, if he never presented his claims in any forum, that
5  no state remedies remain available to him. *See Jackson v. Cupp*, 693 F.2d 867, 869 (9th Cir.
6  1982). "To exhaust one's state court remedies in Arizona, a petitioner must first raise the
7  claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction
8  relief pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then
9  present his claims to the Arizona Court of Appeals. *See Swoopes v. Sublett,* 196 F.3d 1008,
10 1010 (9th Cir. 1999).

**1.  Petitioner concedes that Grounds I, II and III were not properly exhausted and are subject to dismissal.**

13 Respondents contend that Grounds I and III, alleging ineffective assistance of counsel
14 and the violation of Petitioner's right to new counsel and to proceed pro se, were not
15 supported by the citation to a federal basis for the claims in the State courts or in the
16 amended petition for writ of habeas corpus, and that they are procedurally defaulted because
17 the State court found them to be precluded under the Arizona Rules of Criminal Procedure.
18 *Answer*, pp. 10-11. Respondents also assert that Ground II, that evidence was admitted in
19 violation of the Arizona Rules of Criminal Procedure, is not a claim that is cognizable under
20 28 U.S.C. § 2254. *Id.* at pp. 11-12. In his reply, Petitioner does not dispute Respondents'
21 arguments on these claims and "agrees these issues may be dismissed." Accordingly, these
22 claims should be dismissed and will not be addressed further herein.

**2.  Claim IV**

25 With regard to Ground IV, that under *Blakely* Petitioner was denied the right to a jury
26 determination of factors that support an aggravated sentence, Respondents argue that
27 Petitioner did not exhaust the claim because he never sought review from the Arizona
28 Supreme Court. *Answer*, pp. 15-16. In *Swoopes v. Sublett,* 196 F.3d 1008 (9th Cir. 1999),

- 6 -

1 the Ninth Circuit held that, in cases not carrying a life sentence or the death penalty, "claims 2 of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona 3 Court of Appeals has ruled on them." *Swoopes*, 196 F.3d at 1010.  There is no dispute that 4 Petitioner met the exhaustion requirements, at least insofar as the claims raised in his 5 respective appeals, described in *Swoopes* by appealing the trial court's adverse ruling on his 6 PCR petition to the Arizona Court of Appeals.  However, Respondents submit that this was 7 insufficient under the United States Supreme Court's decision in *Baldwin v. Reese*, 541 U.S. 8 27 (2004).

9 In *Baldwin*, which was a case appealed from the Ninth Circuit, the Supreme Court 10 addressed the question of what constitutes notice of the federal nature of a claim sufficient 11 to satisfy the fair presentment requirement found in 28 U.S.C. § 2254(b)(1).  In laying the 12 groundwork for its decision, the Supreme Court stated that "[t]o provide the State with the 13 necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state 14 court (including a state supreme court with powers of discretionary review), thereby alerting 15 that court to the federal nature of the claim." 541 U.S. at 29 (citations omitted). Apparently 16 seizing on this general statement of the law of exhaustion, Respondents contend *Baldwin* 17 supports a finding that *Swoopes*, at least insofar as it addresses the need for habeas petitioners 18 to seek review in a the highest state court, is no longer valid.  However, an examination of 19 the rationale employed in the *Swoopes* decision readily distinguishes that case from the 20 general statement of law cited by the Respondents.

21 *Swoopes* was decided on remand to the Ninth Circuit for consideration in light of the 22 Supreme Court's decision in *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  In *Swoopes*, the 23 Ninth Circuit, just like the *Baldwin* court, began by reiterating the general rule stated in 24 *O'Sullivan* that, "in order to satisfy the exhaustion requirement for federal habeas relief, state 25 prisoners must file for discretionary review in a state supreme court when that review is part 26 of ordinary appellate review." *Swoopes*, 196 F.3d at 1009, citing *O'Sullivan*, 526 U.S. at 847. 27 The court recognized, however, that the Supreme Court in *O'Sullivan* had "acknowledged 28 an exception to the exhaustion requirement," by making it clear the "'the creation of a

- 7 -

1 discretionary review system does not, *without more*, make review' in a state supreme court
2 'unavailable.'" *Swoopes*, 196 F.3d at 1009, quoting *O'Sullivan*, 526 U.S. at 848 (emphasis
3 added in *Swoopes*). The Ninth Circuit proceeded to review Arizona's discretionary review
4 system and found considerations that compelled a finding that, in other than capital cases,
5 appeal to the Arizona Supreme Court was unnecessary. Specifically, the court found that two
6 Arizona cases, *State v. Shattuck*, 140 Ariz. 582, 684 P.2d 154 (1984), and *State v. Sandon*,
7 161 Ariz. 157, 777 P.2d 220 (1989), made it clear that, "in cases not carrying a life sentence
8 or the death penalty, review need not be sought before the Arizona Supreme Court in order
9 to exhaust state remedies." *Swoopes*, 196 Ariz. at 1010. Thus, the court concluded, "post-
10 conviction review before the Arizona Supreme Court is a remedy that is 'unavailable' within
11 the meaning of *O'Sullivan*. There is nothing in *Baldwin* that suggests, implicitly or explicitly,
12 that this analysis is flawed or that the holding has been overruled.

13 Also strongly suggestive of the continued vitality of *Swoopes* is that the Ninth Circuit
14 continues to cite the case for the very proposition Respondents suggest was overruled. In
15 *Castillo v. McFadden*, 399 F.3d 993 (9th Cir. 2005), the court stated as a matter of fact that
16 "[i]n cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners
17 are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled
18 on them.'" *Id.* at 998 n. 3, quoting *Swoopes*, 196 Ariz. at 1010. At least one other circuit has
19 also cited *Swoopes* for this proposition without questioning its continuing validity. *See*
20 *Lambert v. Blackwell,* 387 F.3d 210 (3rd Cir. 2004). These considerations make clear that
21 Respondents' interpretation of *Baldwin* is incorrect. However, as discussed below,
22 Petitioner's remaining claim is meritless and, even if exhausted, subject to dismissal.

23 **D.   Merits**

24 Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any
25 claim that was adjudicated on the merits in State court proceedings" unless the state decision
26 was (1) contrary to, or an unreasonable application of, clearly established federal law as
27 determined by the United States Supreme Court; or (2) based on an unreasonable
28 determination of the facts in light of the evidence presented in the State court proceeding.

1  28 U.S.C. § 2254(d). *See Williams v. Taylor*, 120 S.Ct. 1495 (2000). A state court's decision
2  can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority,
3  or (2) if it applies the controlling authority to a case involving facts "materially
4  indistinguishable" from those in a controlling case, but nonetheless reaches a different result.
5  *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000). In determining whether a state
6  court decision is contrary to federal law, the court must examine the last reasoned decision
7  of a state court and the basis of the state court's judgment. *Packer v. Hill*, 277 F.3d 1092,
8  1101 (9th Cir. 2002). A state court's decision can be an unreasonable application of federal
9  law either (1) if it correctly identifies the governing legal principle but applies it to a new set
10 of facts in a way that is objectively unreasonable, or (2) if it extends or fails to extend a
11 clearly established legal principle to a new context in a way that is objectively unreasonable.
12 *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

13 Although, in his appeal of the trial court's denial of post-conviction relief, Petitioner argued to the Arizona Court of Appeals that the trial court erred in denying his *Blakely* claim (Ex. W.), the Court did not address the substance of the claim, but determined only that "any issue not first presented to the trial court and properly preserved in the original petition for review may not be considered by this court. *See* Arizona Rules of Criminal Procedure, 32.9(c) and *State v. Bortz*, 169 Ariz. 575, 821 P.2d 235 (App. 1991)." (Ex. Y.) Because the Court of Appeals did not evaluate this claim, the last reasoned decision on the claim is that of the trial court.

In his PCR petition filed in the trial court, Petitioner argued that:

> The unconstitutionality of the [Arizona] sentencing scheme is evident in this case – when [Petitioner] was sentenced the fact-finding and weighing was mandated to occur without any admission by the [Petitioner that the fact was true and without any presentation of the facts to a jury. And, the fact-finding and weighing occurred without any determination by a jury, or even the trial court, that the facts are true beyond a reasonable doubt. Because Defendant was sentenced pursuant to a sentencing scheme that is wholly unconstitutional, his sentence must be vacated.

(Ex. R., p. 6.) Petitioner also argued that the trial court erred by making factual findings that

- 9 -

1  exposed Petitioner to a "greater-than-presumptive sentence based on the parameters of
2  A.R.S. § 13-702." (*Id.*, p. 7.) Specifically, Petitioner contended that it was error for the court
3  to characterize his unlawful flight as an "event that was of great danger to the community,"
4  and by noting that Petitioner was on felony release when the events underlying his conviction
5  occurred. (*Id.*) In response, relying on *State v. Martinez*, 209 Ariz. 280 (2004), the State
6  argued that no error had occurred because the aggravated sentencing range was available
7  because Petitioner had admitted numerous prior convictions during the trial, and because the
8  trial court had found six historical priors which it was permitted to do under *Blakely*. (Ex.
9  S, pp. 1-2.) The State also argued that *Blakely* had no impact because Petitioner's case was
10 final when *Blakely* was decided and the case could not be applied retroactively. (*Id.* at p. 2.)

12 On January 24, 2005, the trial court issued its order denying and dismissing the
13 petition for post-conviction relief. (Ex. T.) The court did not address the retroactivity
14 argument raised by the State, but concluded that "[t]he *Blakely* issue is resolved by *State v.*
15 *Martinez*, ___ Ariz. ___, 2004 WL 2474976 . . . ." (*Id.*; *see also* Ex. V (trial court denying
16 motion for rehearing on *Blakely* issue).) As discussed below, however, relief under *Blakely*
17 was not available to Petitioner because, as the State argued, his case was final before *Blakely*
18 was decided.

19 *Blakely* may not be applied retroactively to cases on collateral review if they were
20 final at the time *Blakely* was decided by the United States Supreme Court. *See Schardt v.*
21 *Payne*, 414 F.3d 1025, 1027 (9th Cir. 2005). In *Beard v. Banks*, 542 U.S. 406 (2004), the
22 Supreme Court concluded that the rule of non-retroactivity applied in federal habeas actions
23 even if the state court addressed the merits of the claim at issue. *Id.* at 412-413. A state
24 conviction becomes "final," for purposes of the *Teague* rule of non-retroactivity of new
25 decisions of constitutional criminal procedure on habeas review, when the availability of
26 direct appeal to the state courts has been exhausted and the time for filing a petition for a writ
27 of certiorari has elapsed or a timely filed petition has been finally denied. *Teague v. Lane*,
28 489 U.S. 288 (1989); *Beard*, 542 U.S. at 411.

Here, Petitioner's last direct review proceeding, his appeal to the Arizona Court of Appeals, was decided on November 20, 2003. (Exs. M & N.) Petitioner then had 30 days to seek review by the Arizona Supreme Court. Ariz.R.Crim.P. 31.19(a). Because he did not seek such review, his judgment became final on the expiration of that time, on December 31, 2003. *Blakely* was decided on June 24, 2004, and therefore does not apply to Petitioner's case.

Moreover, Petitioner has presented nothing in his petition for habeas relief that would allow the Court to conclude that this analysis involved either an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. In *Martinez*, the Arizona Court of Appeals concluded "that the existence of one aggravating factor . . . expanded the sentencing range and the scope of the trial court's sentencing discretion." 209 Ariz. 280. This statement is consistent with the requirements of *Blakely*, where the Supreme Court stated that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303. Here, Petitioner admitted a number of prior felony convictions while testifying. (Ex. G (Minute Order listing 12 prior convictions).) Under Arizona's statutory sentencing scheme, any of these prior convictions are sufficient aggravating factors to allow Petitioner's sentence to be aggravated. *See* A.R.S. § 13-702(C). In sum, there is nothing in the record that suggests the trial court's finding was anything but reasonable.

**III.   RECOMMENDATION**

For all of the above reasons, **THE MAGISTRATE JUDGE RECOMMENDS** that the District Court, after its independent review, **DISMISS WITH PREJUDICE** Petitioner's Amended Petition for Writ of Habeas Corpus filed June 9, 2005 (Docket No. 5).

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have ten (10) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV 05-1295-PCT-FJM**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 7th day of February, 2008.

*Jacqueline Marshall*
Jacqueline Marshall
United States Magistrate Judge